# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| MICHAEL LETOURNEAU, | ) No. 09 B 9199 |
| | ) |
| Alleged Debtor. | ) Judge Goldgar |

## MEMORANDUM OPINION

This matter is before the court for ruling following a hearing on the court's order of June 8, 2009. The June 8 order required alleged debtor Michael Letourneau to show cause why he should not be sanctioned for violating Rule 9011 of the Federal Rules of Bankruptcy Procedure by filing an involuntary bankruptcy case against himself. For the reasons discussed below, Letourneau violated Rule 9011(b)(1), and he will be sanctioned pursuant to Rule 9011(c).

### I. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). *See Baermann v. Ryan (In re Ryan)*, 411 B.R. 609, 613 (Bankr. N.D. Ill. 2009); *Troost v. Kitchin (In re Kitchin)*, 327 B.R. 337, 359 (Bankr. N.D. Ill. 2005). The court retains jurisdiction although the case was dismissed on July 13, 2009. *Kitchin*, 327 B.R. at 359; *In re Slaughter*, 191 B.R. 135, 139 (Bankr. W.D. Wis. 1995).

## II. Facts

The following facts are drawn from the court's docket,[1] Letourneau's written response to the June 8 order, the transcript of a September 3, 2009, evidentiary hearing, and other proceedings in the case.

On March 19, 2009, an involuntary chapter 7 bankruptcy petition was filed against Michael Letourneau. (Dkt. No. 1). The first page of the petition listed Letourneau's name, what purported to be Letourneau's social security number, and Letourneau's home address in Bannockburn, Illinois. The second page gave the names and addresses of three petitioning creditors: Peter Hoogheem, Emery Moorehead, and Gina Hanusa. According to the petition, Letourneau owed each of these creditors a "partnership debt" in a particular amount. The second page also bore what purported to be the signatures of the petitioning creditors.

Although a summons must be issued to an alleged debtor in an involuntary case, *see* Fed. R. Bankr. P. 1010(a), the docket showed no summons was issued to Letourneau. Apart from the filing of the petition, in fact, the docket reflected no activity at all in the early days of the case. After almost a month in which essentially nothing happened, the court entered an order setting a status hearing for June 8, 2009, and notifying the petitioning creditors that if they failed to appear

---

[1] A bankruptcy court can take judicial notice of the contents of its own records. *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002); *In re Woodmar Realty Co.*, 294 F.2d 785, 788 (7th Cir. 1961) (stating that bankruptcy court is "duty bound to take judicial notice of its records and files"); *In re Magallanez*, 403 B.R. 558, 563 (Bankr. N.D. Ill. 2009); *In re Jackson*, 401 B.R. 333, 336 n.1 (Bankr. N.D. Ill. 2009).

the case would be dismissed for want of prosecution. (Dkt. No. 5). A copy of the order was mailed to the petitioning creditors and to Letourneau at the addresses shown on the petition.

Meanwhile, on May 14, 2009, American Chartered Bank filed a motion to modify the stay in order to complete a foreclosure action in Illinois state court in connection with Letourneau's Bannockburn property. (Dkt. No. 9). The motion said that a judgment of foreclosure and sale had been entered in the action the previous September, a judicial sale of the property had been held in January 2009, and the sale had been approved that same month, all before the filing of the involuntary bankruptcy case against Letourneau.

None of this was terribly surprising. The surprise came later in the motion (which was granted on May 20). The bank asserted that the bankruptcy court's docket showed Letourneau himself had paid the filing fee for the involuntary case. (*Id.* at 5, ¶ 15). An inspection of the docket bears out this assertion. The second entry states: "Receipt of Chapter 7 Filing Fee - $299.00 by DO. Receipt Number 03168376. Payment received from Michael Letourneau. (Entered: 03/20/2009)."

At the June 8 status hearing, neither Letourneau nor the petitioning creditors appeared. Only counsel for the U.S. Trustee was there, along with another lawyer who said that putative creditor Peter Hoogheem had come to him after receiving papers from the case in the mail. According to the lawyer, Hoogheem denied signing the petition against Letourneau.

That same day, the court entered an order stating that alleged debtor

Letourneau, not the petitioning creditors, appeared to have filed the involuntary case, because the docket showed Letourneau had paid the filing fee, and the signatures of the creditors may have been forged. The goal of the case therefore seemed to have been to gain the benefit of the automatic stay without filing a voluntary chapter 7 case. Letourneau was ordered to appear on July 8 (later continued to July 13) and show cause why he should not be sanctioned for filing a case for an improper purpose in violation of Rule 9011(b)(1). (Dkt. No. 14).

Shortly before the July 13 hearing date, Letourneau filed a written response to the show cause order through counsel. (Dkt. No. 19). In his response, Letourneau did not deny filing the petition and paying the fee. He said, however, that he had been "a victim of a fraudulent mortgage rescue firm which claimed to be assisting him." (*Id.* at 1). According to Letourneau, he had received a phone call advising him to call a California firm that could supposedly save his home. Letourneau made the call and was instructed to prepare and record a quitclaim deed transferring an interest in the property to a Qaiser Jehan. Letourneau prepared and recorded the deed. (*Id.* at 2 and Ex. A).

After the recording of the deed, the California firm demanded $2,500 in rent from Letourneau, a payment characterized as a charitable donation to a non-profit entity run by Jehan. Letourneau said he could not make the payment. He was told that someone (it is unclear who) would make the payment for him, and he was left with the impression that the debt would somehow be settled later. (*Id.* at 3).

Letourneau said he was then sent an e-mail telling him to provide the sender

with "'three names and addresses of your friends or any body [*sic*].'" (*Id.* at 3 and Ex. B). The e-mail said "we will make papers" (meaning the involuntary bankruptcy petition) that would be sent to Letourneau for him to "file over there quickly"(meaning file with the bankruptcy court). (*Id.*) When Letourneau received the petition, he said, it had already been filled out and signed. He neither prepared nor signed it. He was directed to the bankruptcy court's web site and was told "to file the papers and pay the filing fee." (*Id.* at 3).

On July 13, the date of the show cause hearing, Letourneau and his lawyer appeared along with counsel for the U.S. Trustee. The court expressed a desire to hear Letourneau's explanation from his own mouth. (Tr. dated July 13, 2009, at 2, 10-11). The U.S. Trustee, however, asked to participate in the hearing and requested a continuance to perform additional investigation. (*Id.* at 2, 6). The hearing was therefore continued to September 3, 2009. At the suggestion of Letourneau's lawyer (*id.* at 7), the underlying bankruptcy case was dismissed (Dkt. No. 24).

When September 3 arrived, though, Letourneau's lawyer announced at the hearing that the situation had changed. Letourneau had been notified that the Justice Department was conducting a criminal investigation of him in connection with the mortgage fraud matter. (Tr. dated Sept. 3, 2009, at 24). Accordingly, Letourneau (who appeared for the hearing only out of concern that he had been ordered to do so) declined to testify in his own behalf and declined to offer any additional evidence in response to the court's show cause order. (*Id.* at 24-26). If

required to testify, his lawyer said, Letourneau would invoke his Fifth Amendment privilege against self-incrimination. (*Id.* at 24).

The U.S. Trustee nevertheless called Letourneau as a witness, and as predicted he invoked his Fifth Amendment privilege to every question. Among the questions in response to which Letourneau took the Fifth were questions about whether he filed the involuntary petition, whether he paid the filing fee, whether he owed the petitioning creditors partnership debts, whether he believed any of the petitioning creditors had signed the petition, and whether the petition was filed to delay the foreclosure action on the Bannockburn property. (*Id.* at 29-31).

The U.S. Trustee also called Peter Hoogheem as a witness. Hoogheem testified that Letourneau had been his neighbor for about fifteen years, but he denied having ever been in business with Letourneau or in a partnership with him. (*Id.* at 51). Hoogheem added that he had first seen the involuntary petition after the clerk's office served him with a notice in the case, that he had not signed the petition, and that he had not authorized anyone else to sign it for him. (*Id.* at 51-52). He had no idea who signed his name or when. (*Id.* at 54).

### III. Discussion

Letourneau's involuntary bankruptcy case was filed for an improper purpose in violation of Rule 9011(b)(1) of the Bankruptcy Rules. An appropriate sanction will be imposed under Rule 9011(c) for the violation.

## A.

Rule 9011 is the bankruptcy analogue of Rule 11 of the Federal Rules of Civil Procedure and indeed is "essentially identical" to Rule 11. *In re Collins*, 250 B.R. 645, 659 (Bankr. N.D. Ill. 2000) (internal quotation omitted). Like Rule 11, Rule 9011 is intended to deter baseless and abusive litigation and litigation tactics. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *Corley v. Rosewood Care Ctr., Inc.*, 388 F.3d 990, 1013 (7th Cir. 2004); *Kitchin*, 327 B.R. at 337.[2]

Under Rule 9011(b), an attorney or unrepresented party who presents "a petition, pleading, written motion, or other paper" to the court, whether by "signing, filing, submitting, or later advocating," makes four certifications to the court. Three are certifications that the legal assertions in the case have a basis in the law (or a fair argument for the law's modification), and the factual contentions and denials in the case have evidentiary support or are likely to after a reasonable opportunity for investigation. Fed. R. Bankr. P. 9011(b)(2)-(4). The fourth, relevant here, is a certification that the paper "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Bankr. P. 9011(b)(1).

The "improper purpose clause" in Rule 9011(b)(1) is directed at abusive

---

[2] The *Cooter & Gell* and *Corley* decisions concerned Rule 11, not Rule 9011. Because the rules are largely the same, case law under Rule 11 is helpful in the interpretation of Rule 9011. *Ryan*, 411 B.R. at 614 (noting that "courts look frequently to cases that interpret Rule 11 when construing Bankruptcy Rule 9011"); *Collins*, 250 B.R. at 659 (stating that "Rule 11 precedents may be applied to make decisions under Rule 9011").

litigation practices. *Ryan*, 411 B.R. at 615; *Kitchin*, 327 B.R. at 366. It prohibits the filing of a paper for any improper purpose, "'whether or not [the paper] is supported by the facts and law, and no matter how careful the pre-filing investigation.'" *Ryan*, 411 B.R. at 615 (quoting *Kitchin*, 327 B.R. at 366); *see also Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001).

In determining whether Rule 9011(b)(1) has been violated, the critical question is *why* the allegedly offending paper was filed. *Kitchin*, 327 B.R. at 366; *Collins*, 250 B.R. at 661; *see also Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987). That question is answered by considering whether "'objectively ascertainable circumstances'" support the inference that the purpose of the filing was improper. *Ryan*, 411 B.R. at 615 (quoting *Collins*, 250 B.R. at 662); *see also Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir. 1988) ("Although the emphasis is on the party's motive for filing the paper, the party's conduct is judged on an objective standard based on the circumstances of the case").

That Letourneau filed this case for an improper purpose should be obvious. The case was an involuntary chapter 7 bankruptcy that Letourneau, the debtor, fraudulently filed against himself. The creditors whose names appeared on the petition, though real people, were not creditors of Letourneau and did not sign the petition. The putative creditors took no actions at all in the case and failed to appear at a status hearing although ordered to do so. At the September 3 evidentiary hearing, one of the putative creditors, Peter Hoogheem, denied having been in business with Letourneau (the petition had said Letourneau owed him a

"partnership debt") and denied signing the petition. Letourneau either knew or should have known that the petition was false and the creditors not really creditors because he supplied their names to the California firm that then prepared the petition and returned it to him for filing.

There is no circumstance under which a debtor's filing of an involuntary case against himself can be proper. An involuntary bankruptcy is a remedy for creditors, not debtors. Its purpose is "to protect the threatened depletion of assets or to prevent the unequal treatment of similarly situat[ed] creditors." *In re Manhattan Indus., Inc.*, 224 B.R. 195, 200 (Bankr. M.D. Fla. 1997); *see also In re Tichy Elec. Co.*, 332 B.R. 364, 372 (Bankr. N.D. Iowa 2005) (noting that the "purpose of an involuntary filing should be the equal distribution of assets among creditors"). A debtor who wants relief under chapter 7 of the Bankruptcy Code files a voluntary case. The lack of any conceivable legitimate purpose for Letourneau's petition demonstrates its improper purpose. *See Deere & Co. v. Deusche Lufthansa A.G.*, 855 F.2d 385, 393 (7th Cir. 1988).[3/]

But there is more. The petition had the effect of delaying Letourneau's creditors. American Chartered Bank had been in the final stages of a foreclosure action in Illinois state court involving Letourneau's home when Letourneau filed his

---

[3/] "As in tort law, the event [claimed to be sanctionable] sometimes speaks for itself. That is, Rule 11 no less than common law recognizes the doctrine of res ipsa loquitur." *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989). The mere statement that "a debtor filed an involuntary bankruptcy petition against himself" expresses, without need of elaboration, that the filing was for an improper purpose.

petition. Almost two months after the petition was filed, the bank apparently got wind of the case and felt it necessary to file a motion to lift the stay so that the foreclosure could be concluded. The filing of an involuntary case for the purpose of holding off a single creditor of the alleged debtor is improper and violates Rule 9011. *Cf. In re Fox Island Square P'ship*, 106 B.R. 962, 968-70 (Bankr. N.D. Ill. 1989) (imposing Rule 9011 sanctions on partners who filed an involuntary case against their own partnership to stall a state court foreclosure proceeding).

### B.

In his post-hearing memorandum, Letourneau abandons the explanation of his conduct he gave in his written response. He argues instead simply that the U.S. Trustee had the burden of proving a Rule 9011 violation at the September 3 hearing and did not meet it. According to Letourneau, the evidence at the hearing failed to show he had filed the case at all, much less that he filed it for an improper purpose.

Letourneau is mistaken on a couple of levels. Chief among them is his belief that the evidentiary hearing was separate from his written response to the show cause order. Not so. The hearing was supplemental to the response, held for Letourneau to support the written explanation of his conduct and for the court to assess his credibility. (*See* Tr. dated July 13, 2009, at 10-11). The Rule 9011 question could just as easily have been decided on the basis of the response alone.[4]

---

[4] At least one well-known authority suggests that Rule 11 sanctions should generally be decided on the papers and that evidentiary hearings "would not seem to be necessary and should be avoided" – unless there are disputed facts or credibility questions, something that will "rarely be true." *See* William W.

*See* Fed. R. Civ. P. 11(b) advisory committee's note (1993) (noting that whether the matter "should be decided solely on the basis of written submissions or should be scheduled for oral argument (or, indeed, for evidentiary presentation) will depend upon the circumstances"); *see Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1359 (3d Cir. 1990) (stating that Rule 11 "gives the judge flexibility in deciding on the sound course to pursue" in accommodating the respondent's due process rights).

Nor did the U.S. Trustee have some sort of evidentiary burden at the hearing – or indeed at any other point in the process. The court initiated the Rule 9011 proceeding here, not the U.S. Trustee or any other party, and so the proceeding was governed by Rule 9011(c)(1)(B). Under Rule 9011(c)(1)(B), the proceeding begins with a "show cause order" from the court providing the party accused of a violation with notice and "an opportunity to respond." *See* Fed. R. Civ. P. 11(c) advisory committee's note (1993). That opportunity allows the accused party "to demonstrate how she has not violated the rule," to "explain to the Court why she should not be sanctioned." *McDonald v. Entergy Operations, Inc.*, No. Civ.A. 505CV95WHBAGN, 2005 WL 3133032, at *2 (S.D. Miss. Nov. 22, 2005); *see also Matsumaru v. Sato*, 521 F. Supp. 2d 1013, 1016 (D. Ariz. 2007); *Johnson v. Barnes*, 283 F. Supp. 2d 1297, 1301 n.2 (S.D. Ga. 2003).

Whatever "burden" there was here, then, fell on Letourneau to "present[ ] evidence and arguments why sanctions should not be imposed," to "'persuade' the

---

Schwarzer, *Sanctions under the New Federal Rule 11 – a Closer Look*, 104 F.R.D. 181, 198 (1985).

court that sanctions are not warranted." *Cook v. American S.S. Co.*, 134 F.3d 771, 776 (6th Cir. 1998) (discussing the show cause procedure under 28 U.S.C. § 1927(a) and rejecting the contention that the procedure shifted burden to respondent to "prove his innocence"). The U.S. Trustee's involvement in the Rule 9011 matter here was purely incidental; nothing required him to participate in the September 3 hearing. Had he not appeared on July 13 and asked to participate (*see* Tr. dated July 13, 2009, at 2, 6), the hearing would still have gone ahead, and it would still have been up to Letourneau to explain why he should not be sanctioned.[5]

Burdens aside, the evidence was more than sufficient to justify the inference that Letourneau filed the case. Letourneau admitted in his written response to the show cause order that his instructions from California were to submit three names, that the "papers" would be returned for him to file, that he received the completed petition, and that he was directed to the court's web site and told to "file the papers and pay the filing fee." (Dkt. No. 19 at 2-3).[6] The court's docket reflects

---

[5] The U.S. Trustee was statutorily entitled to participate. *See* 11 U.S.C. § 307 ("The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title . . . ."). His participation did not transform the Rule 9011 proceeding from one under Rule 9011(c)(1)(B) initiated by the court to one under Rule 9011(c)(1)(A) initiated by a party and in which the burden of proof would fall on that party, *see In re KPMA P'ship*, No. 04-35261, 2006 WL 2868978, at *1 (Bankr. S.D. Texas Oct. 5, 2006).

[6] Letourneau and the U.S. Trustee disagree about whether statements in the response can be considered. Letourneau argues that his response is off-limits because it was not admitted as an exhibit at the September 3 hearing. The U.S. Trustee argues that the response is a "pleading" and the statements in it binding judicial admissions. Neither argument is correct. The response is not a "pleading." Lawyers often call any document filed with a court a "pleading," but the term is more limited, consisting only of the documents listed in Rule 7(a) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 7(a) (made applicable by Fed. R.

Letourneau's payment of the filing fee when the case was filed. (Dkt. No. 2). At no point has Letourneau denied filing the case – not in his written response and not at the September 3 hearing. Asked at the hearing whether he had filed the case, Letourneau invoked his Fifth Amendment privilege. Because this is a civil matter, an adverse inference can be drawn from Letourneau's refusal to answer and his privilege claim taken as an admission that he filed the case. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1978); *In re Andreas*, 373 B.R. 864, 875 (Bankr. N.D. Ill. 2007).

Letourneau also appears to contend that his purpose in filing the case was not improper because he acted solely to save his home. (Dkt. 19 at 1). He adds that he is not a lawyer and filed the case at the instance of a mortgage rescue firm without understanding what he was doing. (*Id.*).

None of this is persuasive. Letourneau probably did file the case to save his home. But the "improper purpose" portion of Rule 9011 is evaluated objectively and does not require a showing of "subjective bad faith." *Slaughter*, 191 B.R. at 141. "That is, if the filed document does, in fact, lead to needless delay or cost or is in some other way 'improper,' it violates Rule 9011 regardless of the . . . subjective belief in the need to file the document." *Id.* There is nothing improper in wanting to save one's home, but it is highly improper to go about it by filing an involuntary

---

Bankr. P. 7007). A response to a show cause order is not listed and so cannot be a "pleading." (No brief or memorandum is a "pleading.") That said, Letourneau's statements in his response are certainly fair game here, since the response constitutes his explanation to the court – his attempt to "show cause" – why he should not be sanctioned. That the response was not admitted into evidence at the hearing is irrelevant. In arguing otherwise, Letourneau again treats the hearing as somehow separate from his written response rather than supplemental to it.

-13-

case against oneself using a fraudulent petition. As for Letourneau's defense that he was "only following orders," Rule 9011 expressly makes responsible any person who files a petition with the court. *See* Fed. R. Bankr. P. 9011(b). It is no defense that someone else told the person to file the petition, nor is it a defense that the person is not a lawyer.[7]

### C.

The only remaining question is the sanction itself. When the court initiates a Rule 9011 proceeding, Rule 9011(c)(2) limits the available monetary sanction to "an order to pay a penalty into court." Fed. R. Bankr. P. 9011(c)(2); *see Vollmer v. Publishers Clearing House*, 248 F.3d 698, 711 n.11 (7th Cir. 2001). Generally, a court enjoys broad discretion in determining the appropriate size of that penalty, *see Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003), provided it is no greater than "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," Fed. R. Bankr. P. 9011(c)(2); *see also Divane*, 319 F.3d at 314 (noting that discretion is limited to setting a sanction that "will serve the

---

[7] It is hard to believe Letourneau failed to realize what he was doing. The petition he filed was a simple two-page document. (Dkt. No. 1). The first page bore his own name at the top as "Debtor." The second page contained a "request for relief" against him on behalf of three petitioning creditors, showed the creditors' names and addresses, described each claim as a "partnership debt," and gave the claim amounts. If Letourneau could read English – and presumably he could since he was last employed in the "construction management industry" (Dkt. No. 19 at 2) – he could understand all this and appreciate its import. Moreover, he either knew or should have known the contents of the petition were false. Asked at the hearing whether he owed these creditors partnership debts and whether he believed the creditors had actually signed the petition, Letourneau declined to answer and invoked his Fifth Amendment privilege. (Tr. dated Sept. 3, 2009, at 29-31).

-14-

deterrent purpose of Rule 11"). Absent "extraordinary circumstances," the court of appeals has said, "*sua sponte* sanctions are generally limited to several thousand dollars." *Vollmer v. Selden*, 350 F.3d 656, 663 (7th Cir. 2003).

It would probably not take much of a monetary sanction to deter Letourneau himself. Not only has he been put to the trouble and expense of hiring counsel and appearing at a hearing, but he has suffered the embarrassment of having the court accuse him publicly of abusing the judicial system and then find publicly that he in fact committed the abuse. If Letourneau did not previously appreciate the gravity of filing a baseless involuntary case against himself, he surely does now.[8/] The monetary equivalent of a slap on the wrist would be enough to prevent recidivism. *Cf.* Georgene M. Vairo, *Rule 11 Sanctions: Case Law, Perspectives and Preventive Measures* 572 (Richard G. Johnson ed., 3d ed. 2004) (noting that mere publication of an opinion describing the infraction and imposing sanctions "publicly reprimands an attorney"); Schwarzer, *supra*, 104 F.R.D. at 201-02 (discussing reprimands of counsel and underscoring "the sting of public criticism delivered from the bench").

A related factor favoring a light monetary sanction is Letourneau's financial condition. Letourneau asserted in his response to the show cause order that he had lost his job in 2008 and since then had only worked part-time. (Dkt. No. 19 at 2). He said "his life's savings" had been wiped out as a result. (*Id.* at 4). Letourneau, his wife, and their four children also lost their home in the state court foreclosure

---

[8/]  In his written response, Letourneau apologized for his actions and said he had "learned a valuable lesson." (Dkt. No. 19 at 4).

action and, despite the bankruptcy filing, moved out following the judicial sale. (*Id.* at 3). It appears they are now renting a place. (Tr. dated July 13, 2009, at 7). The U.S. Trustee offers no reason to doubt these assertions. A party's ability to pay is a relevant consideration in setting a Rule 9011 sanction, *see Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1366 (7th Cir. 1994); *White v. General Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990), since a smaller sanction levied against a poor party will still serve the rule's deterrent purpose.

A heavier sanction must be imposed, however, to deter "comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). The maneuver Letourneau employed here is a serious abuse of the bankruptcy system. An involuntary case gives rise to the automatic stay under section 362 just as much as a voluntary case. *See* 11 U.S.C. § 362(a) (stating that a petition filed "under section . . . 303 of this title . . . operates as a stay"). The debtor who is the target of the petition therefore gains the same protections as any other debtor. But when the petitioning creditors are fictitious because the debtor himself filed the case, the rest of the process breaks down. No summons is issued and served, and so no order for relief is ever entered. With no order for relief, no trustee is appointed, no schedules are filed, and no creditors meeting is held. Creditors receive no notice of the case. The case simply languishes until the court or the U.S. Trustee discovers the charade and brings it to a halt. In the meantime, though, the debtor has had one of the main benefits of a voluntary case – the automatic stay – with none of the burdens. *See In re Grossinger*, 268 B.R. 386, 387 (Bankr. S.D.N.Y. 2001) (describing

the consequences of "patently baseless and improper involuntary filings").

Only a fairly sophisticated person acquainted with bankruptcy law could come up with a scheme like this. It has to be nipped in the bud. A sanction larger than would be necessary in the usual civil case is therefore appropriate because, as this case amply demonstrates, "'bankruptcy proceedings are subject to a degree of manipulation and abuse not typical of civil litigation.'" *Collins*, 250 B.R. at 660 (quoting *In re Marsch*, 36 F.3d 825, 830 (9th Cir. 1994)). For his violation of Rule 9011, Letourneau will be ordered to pay a penalty of $2,500.

## IV. Conclusion

For these reasons, the court finds that Michael Letourneau filed this case for an improper purpose in violation of Bankruptcy Rule 9011(b)(1). Pursuant to Bankruptcy Rule 9011(c)(2), Letourneau is ordered to pay to the clerk of the court a penalty of $2,500. Payment is due in 30 days. A separate order will be entered consistent with this opinion.

Dated: February 4, 2010

_____
A. Benjamin Goldgar
United States Bankruptcy Judge